IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 26-51549-ALT |
| ALAMO BIOLOGICS LLC, | § | (Chapter 11) |
| | § | |
| DEBTOR. | § | |

**AMENDED AND RESTATED OBJECTION TO DEBTOR'S APPLICATION TO PAY PREPETITION CLAIMS OF PURPOTED "CRITICAL VENDORS"**

TO THE HONORABLE AUBREY L. THOMAS, UNITED STATES BANKRUPTCY JUDGE:

Human Regenerative Technologies LLC ("**HRT**") and Skye Orthobiologics LLC ("**Skye**") file this amended and restated objection to the *Debtor's Emergency Application for Authorization to Pay Prepetition Claims of Critical Vendors* (Dkt. No. 45, the "**Application**") and would respectfully show as follows:

1. This objection amends and restates HRT and Skye's original objection (Dkt. No. 48) and supplemental objection (Dkt. No. 59).

## I. SUMMARY

2. The Application should be denied for six reasons:

- The Debtor cannot meet the strict requirements for paying prepetition claims under the doctrine of necessity. The Debtor has been operating its business in chapter 11 for over three months. Obviously, it has found workable solutions with its vendors that do not require payment of their prepetition claims.
- The Debtor does not have legal authority to pay the prepetition claims of any vendors. All the Debtor's funds are encumbered cash collateral, and this Court's interim cash collateral order does not allow the Debtor to pay any prepetition vendor claims.
- The Debtor does not have the ability to pay the requested prepetition vendor claims. The Debtor has filed only one monthly operating report in this case, and it shows the Debtor lost over $633,000 during June 2026 and ended the month with less than $60,000 in cash.
- The relief requested would constitute a *sub rosa* chapter 11 plan by dictating the essential terms of a plan without going through the disclosure and confirmation process.

- The Application is a sham to avoid sections 1122(a) and 1123(a)(4) of the Bankruptcy Code, which require a chapter 11 plan to provide the same treatment for similar claims (here, general unsecured creditors).
- The Debtor requests authority to pay several creditors more than their scheduled claim amounts and pay other purported creditors that have no claims scheduled at all.

## II. FACTS

3. On June 3, 2026, Alamo Biologics LLC (the "**Debtor**") filed a voluntary petition in this Court for relief under chapter 11 of the United States Bankruptcy Code. No trustee has been appointed, and the Debtor continues to manage its assets and operate its business as a debtor-in-possession.

4. No chapter 11 plan has been proposed or filed in this case.

5. HRT and Skye together have a general unsecured claim in the amount of $3,511,697.66 based on an agreed judgment and a defaulted agreement for payment of that judgment. (ECF Claim No. 3.)

6. The Debtor started this bankruptcy case on June 3, 2026 with $218,379 in cash. (*Debtor's Emgcy. App. for Auth. to Use Cash Collateral*, Dkt. No. 3, at ¶ 3). All the Debtor's cash and accounts receivable are fully encumbered by three secured creditors with claims exceeding $5 million. (*Id.* at ¶¶ 2 & 3.)

7. On August 21, 2026, this Court entered a *Third Interim Order Granting Debtor's Emergency Motion for Authority to Use Cash Collateral*. (Dkt. No. 67.) That order does not authorize the Debtor to use any cash to pay prepetition unsecured claims. (*See, generally, id.*)

8. The Debtor has filed only one monthly operating report during the three-plus months this case has been pending. (Dkt. No. 44.) That report shows that the Debtor lost $633,092 during June 2026 and ended that month with only $59,784 in cash. (*Id.* at §§ 1.d & 4.k)

9. Excluding the claim of HRT and Skye, the total amount of general unsecured claims listed in the Debtor's bankruptcy schedules is $6,814,311.21, held by 54 creditors. *Schedule E/F* (Dkt. No. 39). In the Application, the Debtor requesting approval to pay literally half in number (27 creditors) and two-thirds in amount ($4,477,365.46) of those prepetition general unsecured claims in full. Application at Ex. A. After HRT and Skye objected, the Debtor reconsidered and cut the amount by *eighty* percent, to $805,269.69, now for 28 creditors. (*Witness and Exhibit List for Hearing on June 10, 2026*, Dkt. No. 61, Debtor Ex. 1.)

## III. ARGUMENT AND AUTHORITIES

### A. The Debtor cannot meet the strict requirements for paying prepetition claims under the narrow doctrine of necessity.

10. The Debtor asks this Court to do what the Bankruptcy Code forbids as a matter of course: pay favored prepetition general unsecured creditors in full, immediately, while other creditors of the same rank wait for a plan and recover cents on the dollar. That relief is extraordinary. It runs counter to the Code's most basic command – equal treatment of equal claims – and it is available, if at all, only under "the most extraordinary circumstances." *In re CoServ, L.L.C.*, 273 B.R. 487, 494 (Bankr. N.D. Tex. 2002).

11. Equal distribution among similarly situated creditors is the foundation of chapter 11. The Supreme Court has described the Bankruptcy Code's priority system as "a basic underpinning of business bankruptcy law" and "fundamental to the Bankruptcy Code's operation." *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464-65 (2017). A bankruptcy court "may not approve" distributions that deviate from ordinary priority rules without the affected creditors' consent – a rule the Court reaffirmed applies "even in 'rare cases.'" *Id.* at 464, 471. The Bankruptcy Code itself embeds this equality in sections 1122(a) and 1123(a)(4), which require a chapter 11 plan to treat similar claims the same way.

12. A critical vendor application runs directly contrary to that foundation. It seeks to "elevate the status" of a chosen general unsecured creditor "above that of the other general unsecured creditors" and departs "from the pro rata scheme of distribution envisioned by the Code." *Chiasson v. J. Louis Matherne and Assocs. (In re Oxford Mgmt., Inc.)*, 4 F.3d 1329, 1334 (5th Cir. 1993).

13. There is "no support in Section 549 or Section 363(b)(1) for payment of prepetition claims," leaving only Section 105(a) as a possible source. *CoServ*, 273 B.R. at 493. But Section 105(a) is not a font of substantive power. The Fifth Circuit holds that section 105(a)'s equitable powers "must be exercised in a manner that is consistent with the Bankruptcy Code" and do "not ... constitute a roving commission to do equity." *Oxford Mgmt.*, 4 F.3d at 1334. Specifically, section 105(a) does not authorize payment of prepetition unsecured claims on equitable grounds. *Id.*

14. To the extent the Debtor invokes the "doctrine of necessity" or "necessity of payment rule," that doctrine supplies no freestanding authority to pay prepetition claims. It is "a device to be used only in *rare* cases," and there has been no "sea change in the law" expanding it – "[t]housands of debtors have successfully navigated through Chapter 11 in the past without paying the prepetition claims of 'critical' vendors." *CoServ*, 273 B.R. at 491 (emphasis added). Thus, the necessity of payment rule should be used "sparingly" in authorizing payment of prepetition claims. *Id.* at 497.

15. In *CoServ*, Judge Lynn created a three-part test for payment of a critical vendor's prepetition claim under the necessity of payment rule, and the debtor has the burden of proof on all three parts:

a. **Criticality.** It must be "critical that the debtor deal with the claimant" – meaning dealing with the vendor is "virtually indispensable to profitable operations or preservation of the estate," as with a sole supplier or a creditor controlling estate property. *CoServ*, 273 B.R. at 498;

b. **Disproportionate Harm.** Absent payment, the debtor must face "the probability of harm, or ... loss of economic advantage" that is "disproportionate to the amount of the claimant's prepetition claim." *Id.* The Debtor must show "meaningful economic gain" or "serious economic harm ... avoided" that materially exceeds the claim paid – for example, it is "a bad bargain to pay $100,000 to recover $10,000 of estate property." *Id.*

c. **No practical or legal alternative.** There must be "no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim." *Id.* at 499. This element is defeated where ordinary tools are available – "a deposit, collect on delivery terms, payment on shipment and countless other devices" – or where the vendor is bound by contract or restrained by the automatic stay. *Id.*

16. The Debtor has been operating its business in chapter 11 for over three months. Obviously, it has found workable solutions with its vendors that do not require payment of their prepetition claims. The Debtor has not alleged, and certainly will not be able to prove, all three elements of the *CoServe* test to justify paying half of all general unsecured creditors as purported critical vendors after operating in chapter 11 for over three months. This Court should deny the Application for failure to satisfy the strict requirements for paying prepetition general unsecured claims under the narrow doctrine of necessity.

**B. The Debtor does not have legal authority to pay the prepetition claims of any vendors.**

17. The Debtor judicially admitted that all of its cash and accounts receivable are fully encumbered. This Court's interim cash collateral order does not allow the Debtor to pay any prepetition vendor claims. Consequently, the Debtor does not have authority to use any cash to pay any of the prepetition unsecured claims at issue in the Application. This Court should deny the Application as moot due to the prohibition on using cash collateral to pay the requested general unsecured claims.

**C. The Debtor does not have the ability to pay the requested prepetition vendor claims.**

18. The Debtor's cash position plummeted from $218,379 on June 3, 2026 to $59,784 on June 30, 2026. The Debtor lost $633,092 during that month. The Debtor hasn't filed any other monthly operating reports. Judging from that one report, it seems unlikely that the Debtor will have enough cash to pay any significant amount to prepetition unsecured creditors, even setting aside the lack of authority to use *any* cash collateral for that purpose. This Court should deny the Application as moot due to Debtor's lack of available funds to pay the requested general unsecured claims.

**D. The relief requested would constitute a *sub rosa* chapter 11 plan by dictating the essential terms of a plan without going through the disclosure and confirmation process.**

19. The Bankruptcy Code establishes a carefully crafted scheme of creditor protections that must be satisfied before a chapter 11 plan can be confirmed, including the following:

- creditors are entitled to receive a court-approved disclosure statement containing adequate information before any solicitation of plan votes, 11 U.S.C. § 1125;
- creditors whose claims are impaired are entitled to vote to accept or reject a proposed plan, 11 U.S.C. § 1126;
- substantially similar claims must be placed in the same class, 11 U.S.C. § 1122(a);
- all claims in a particular class must be treated the same, 11 U.S.C. § 1123(a)(4); and

- numerous other requirements for confirmation, 11 U.S.C. §§ 1123 and 1129.

20. Those protections exist because reorganization fundamentally restructures the rights of creditors and equity holders. The *sub rosa* plan doctrine enforces those creditor protections by preventing a debtor from accomplishing through a pre-confirmation motion what the Bankruptcy Code requires to be done only through the plan confirmation process. As the Fifth Circuit explained, "[w]hen a proposed transaction specifies terms for adopting a reorganization plan, the parties and the [bankruptcy] court must scale the hurdles erected in Chapter 11." *Institutional Creditors of Continental Air Lines, Inc. v. Continental Air Lines, Inc. (In re Continental Air Lines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) (internal quotation marks omitted). Undertaking reorganization piecemeal … should not deny creditors the protection they would receive if the proposals were first raised in the reorganization plan." *Id.* at 1227-28.

21. A debtor's request that would predetermine the structure of a plan of reorganization is an example of an impermissible *sub rosa* plan. *In re Gulf Coast Oil Corp.*, 404 B.R. 407, 422 (Bankr. S.D. Tex. 2009). The relief requested in the Application will predetermine the structure and terms of a chapter 11 plan by effectively creating two classes of general unsecured claims: a preferred class consisting of 28 claimants whose claims will be paid in full; and a subordinated class of 27 claimants (including HRT and Skye) whose claims will get less favorable treatment – likely *much* less favorable.

22. The *sub rosa* plan doctrine is not limited to asset sales. *See In re Latam Airlines Group, S.A.*, 620 B.R. 722, 815-16 (Bankr. S.D.N.Y. 2020) (post-petition financing); *In re GOL Linhas Aereas Inteligentes S.A.*, 659 B.R. 641, 656 (Bankr. S.D.N.Y. 2024) (proposed settlement stipulation).

23. The Application is an impermissible *sub rosa* plan and will deny HRT and Skye, as well as all other creditors who did not make the Debtor's list of purported "critical vendors,"

the protections of sections 1122(a), 1123(a)(4), 1125, 1126, and 1129 of the Bankruptcy Code. This Court should deny the Application as a *sub rosa* plan.

**E. The Application is a sham to avoid sections 1122(a) and 1123(a)(4) of the Bankruptcy Code, which require a chapter 11 plan to provide the same treatment for similar claims (here, general unsecured creditors).**

24. To be eligible for confirmation, a chapter 11 plan must treat similar claims the same way. 11 U.S.C. §§ 1122(a) and 1123(a)(4). If the Application is granted, the Debtor will be able to avoid those sections by paying half in number and two-thirds in amount of all general unsecured claims in full (excluding the claim of HRT and Skye) and then propose a plan to treat HRT and Skye's claim less favorably.

25. The Application is not the typical "critical vendor" motion seeking more favorable treatment for a few truly critical vendors. Rather, it is a sham to create two classes of general unsecured claims: half who will receive preferred treatment; and half who will receive subordinate treatment. This Court should deny the Application for bad faith and for violating sections 1122(a) and 1123(a)(4) of the Bankruptcy Code.

**F. The Debtor requests authority to pay several creditors more than their scheduled claim amounts and pay other purported creditors that have no claims scheduled at all.**

26. In the Application, the Debtor requests authority to pay the general unsecured claims of the following creditors:

- $16,500.00 to Dr. Bauer;
- $7,528.69 to Linde; and
- $1,366.20 to Tavatek.

Application at Ex. A.

27. The Debtor's sworn bankruptcy schedules list a claim of only $11,000.00 to Dr. Bauer and no claims at all for Linde or Tavatek. (*Schedule E/F*, Dkt. No. 39.) Those vendors

must not be very "critical" if the Debtor did not schedule their claims correctly (or at all), even after receiving two extensions of the deadline to file schedules. (*See Order Granting Debtor's Second Motion for Enlargement of Time to File Debtor's Schedules and Statements [sic] of Financial Affairs*, Dkt. No. 34). The revised vendor list the Debtor filed later includes those same discrepancies – and several more. This Cout should deny the Application at least to the extent the Debtor requests approval to pay creditors more than their scheduled claim amounts.

## IV. CONCLUSION

WHEREFORE, PREMISES CONSIDERED HRT and Skye request that the Court enter an order (a) denying the Application and (b) granting HRT and Skye such other and further relief, at law or in equity, to which they may be justly entitled.

Respectfully submitted,

QUILLING, SELANDER, LOWNDS,
WINSLETT & MOSER, P.C.
2200 Ross Avenue, Suite 2400
Dallas, Texas 75201
(214) 871-2100 (Telephone)
(214) 871-2111 (Facsimile)

By: */s/ Kenneth A. Hill*
Kenneth A. Hill
Texas Bar No. 09646950

and

James Craig Orr, Jr.
Texas Bar No. 15313550
HEYGOOD, ORR & PEARSON
6363 North State Highway 161, Suite 450
Irving, Texas 75038
(214) 237-9001 (Telephone)
(214) 237-9002 (Facsimile)

ATTORNEYS FOR HUMAN REGENERATIVE TECHNOLOGIES LLC AND SKYE ORTHOBIOLOGICS LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served concurrently with filing by the Court's CM/ECF noticing system upon all persons who have filed ECF appearances in this case, including counsel of record for the Debtor, the Office of the United States Trustee, and all persons and entities who have filed a notice of appearance in this case.

*/s/ Kenneth A. Hill*
Kenneth A. Hill